# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | § | |
| **HUMANSCALE CORPORATION** | § | |
| | § | |
| **Plaintiff,** | § | **Case No. 1:12-cv-5988-AKH** |
| | § | |
| **v.** | § | |
| | § | |
| **MASS ENGINEERED DESIGN, INC.,** *et al.* | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MASS ENGINEERED DESIGN, INC.'S AND JERRY MOSCOVITCH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     PROCEDURAL BACKGROUND.............................................................................1

III.    STATEMENT OF FACTS ........................................................................................2

IV.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF
        PERSONAL JURISDICTION.................................................................................3

        A.      LEGAL STANDARD.................................................................................3

        B.      THIS    COURT    DOES    NOT   HAVE    GENERAL
                JURISDICTION OVER DEFENDANTS ...........................................5

        C.      THIS    COURT    DOES    NOT   HAVE    SPECIFIC
                JURISDICTION OVER DEFENDANTS ...........................................9

                1.      Relevant    Jurisdictional    Contacts    Relate    to
                        Enforcement or Defense of the Patent .......................................10

                2.      Enforcing the Patent in Texas Does Not Subject
                        Defendants to Specific Jurisdiction in New York.....................11

                3.      Exercising Jurisdiction in New York Would Offend
                        Fair Play and Substantial Justice..............................................12

        D.      RULE 4(k)(2) DOES NOT PROVIDE ALTERNATIVE
                GROUNDS FOR JURISDICTION OVER MASS .............................13

V.      MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF
        PROCESS ...............................................................................................................14

        A.      LEGAL STANDARD...............................................................................14

        B.      PLAINTIFF'S ATTEMPTED SERVICE IS DEFECTIVE
                UNDER FED. R. CIV. P. 4, UNDER THE HAGUE
                CONVENTION, AND UNDER CANADIAN LAW. .........................15

VI.     THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER
        VENUE....................................................................................................................19

        A.      LEGAL STANDARD...............................................................................19

        B.      THIS DISTRICT IS NOT A PROPER VENUE UNDER
                28 U.S.C. § 1391...................................................................................20

VII.    CONCLUSION........................................................................................................21

# I.     INTRODUCTION

Defendants Mass Engineered Design, Inc. ("MASS") and Jerry Moscovitch, appearing specially for purposes of this Motion only and despite their contention that they have not been properly served in this matter, respectfully submit this memorandum of points and authorities in support of their joint motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(3) for improper venue, and Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

# II.     PROCEDURAL BACKGROUND

Plaintiff Humanscale Corporation ("Plaintiff") filed its complaint on August 3, 2012. (Docket No. 1 [hereinafter "Complaint"]).  Plaintiff asserts declaratory judgment claims under 28 U.S.C. §§ 1331, 1332(a), 1338(a), 1367, and 2201 that Defendant Jerry Moscovitch's U.S. Patent No. RE 36,978 (hereinafter the "patent-in-suit") is not infringed, is invalid, and/or is unenforceable. (Complaint at ¶¶ 4, 25-37.).  Plaintiffs' allegation that this Court as personal jurisdiction over MASS and Mr. Moscovitch conflates the two Defendants and states as follows:

> 5.     Upon information and belief, Defendants are subject to general and specific personal jurisdiction in this Court pursuant to the principles of due process and New York's Long Arm Statute, at least because Defendants have transacted extensive business relevant to this action in the United States and New York. For example, upon information and belief, as described below, Defendants imported and sold prior art devices to Bloomberg L.P., which are highly relevant to the validity of the patent at issue. Upon information and belief, such sales and discussions prefatory to such sales occurred in New York. In addition, Defendants served Humanscale in New York with a complaint alleging infringement of the '978 patent.

(Complaint at ¶ 5).  The Complaint also alleges that Defendants have previously asserted the same patent-in-suit against Plaintiffs in the Eastern District of Texas ("the Texas litigation"), that the Texas litigation was dismissed without prejudice, and that Plaintiffs continue to have a

reasonable apprehension of suit against them with respect to the patent-in-suit. (Complaint ¶¶15-24).

On October 24, 2012, Plaintiff attempted to serve Defendants MASS and Mr. Moscovitch by leaving a copy of service documents outside the premises of MASS's Toronto, Canada office. (Ex. A, January 10, 2013 Declaration of Allan Tameshtit ("Tameshtit Decl.") at ¶ 2). Service was not made on any individual. (*Id.* at ¶¶ 1-2; Ex. B, January 11, 2013 Declaration of Jerry Moscovitch ("Moscovitch Decl.") at ¶¶ 2-7).

## III.   STATEMENT OF FACTS

MASS is a foreign corporation based in Ontario, Canada. (Ex. C, January 11, 2013 Declaration of Raymond Wilk ("Wilk Decl.") at ¶ 2). MASS's principal place of business is in Toronto, Canada. (*Id.* at ¶ 3).

MASS has never owned or maintained an office or facility in New York. (Wilk Decl. at ¶ 4). MASS is not registered to do business in New York. *(Id.* at ¶ 5). MASS has no property located in New York. *(Id.* at ¶ 7). MASS is not required to pay and does not pay taxes in New York. (*Id*. at ¶ 6). MASS has no telephone listings or addresses in New York. (*Id*. at ¶ 8). MASS has no bank accounts located in New York. (*Id*. at ¶ 9). MASS has no employees in New York. (*Id*. at ¶ 10). MASS has no relationships with sales agents or distributors in New York. *(Id.* at ¶ 11). MASS does not solicit business or advertise in New York. (*Id*. at ¶ 12). No officers or agents of MASS have visited New York on business in over six years. (*Id*. at ¶ 13).

MASS operates a website to advertise and sell its products (www.massedi.com). (*Id.* at ¶ 14). The website is generally available on the Internet and is not directed to New York residents. (*Id.*).

In 2009, 2011, and 2012, MASS had no product sales recorded in New York. (*Id*. at ¶ 15). Between 2005 and 2012, MASS had 172 sales in New York that were not solicited by MASS but were instead the result of support services and replacement parts offered by MASS and sought out by persons owning MASS products. (*Id*. at ¶ 16). This activity represents a miniscule fraction of MASS's total sales during this period. (*Id*.). Plaintiff alleges that Defendants made sales to Bloomberg L.P. and allege certain facts pertaining to those sales in the Complaint. (Complaint at ¶5, 10-14). Without agreeing with Plaintiff's allegations stated therein, sales were made to Bloomberg L.P. during or prior to 1999 and have not continued since that time. (*Id*. at ¶ 17).

On November 12, 2009, MASS and Jerry Moscovitch filed a complaint in the Eastern District of Texas against Plaintiff and other parties alleging infringement of the patent-in-suit. (Ex. D, Complaint, *Mass Engineered et al. v. 9X Media, Inc. et al*., Civ. No. 2:09-cv-358 (E.D. Tex. Nov. 12, 2009) [action hereinafter referred to as the "9X Litigation"]). On August 6, 2012, the court dismissed without prejudice all claims by Plaintiff and all counterclaims by Defendants in the Texas litigation. (Ex. E, Order of Dismissal, *Mass Engineered et al. v. 9X Media, Inc. et al*., Civ. No. 2:09-cv-358 (E.D. Tex. Aug. 6, 2012)).

## IV. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A. LEGAL STANDARD

Fed. R. Civ. Pro. 12(b)(2) directs a court to dismiss a case when it lacks jurisdiction over the defendant. Questions of personal jurisdiction in patent cases are governed by Federal Circuit law, not regional circuit law, because "the jurisdictional issue is intimately involved with the substance of the patent laws." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd,* 566 F.3d 1012, 1016 (Fed. Cir. 2009).

Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process. *Autogenomics,* 566 F.3d at 1017. As for the first inquiry, under New York's long-arm statute, a court may exercise jurisdiction over a non-domiciliary defendant only if (1) the defendant is "present" in New York for purposes of § 301 of the New York Civil Procedure Law and Rules ("CPLR"), or (2) the defendant's contacts with New York satisfy the requirements of the New York long-arm statute, CPLR § 302, which requires a "nexus" to the underlying cause of action. *See Schultz v. Safra Nat'l Bank of N.Y.*, No. 09-1671, 2010 U.S. App. LEXIS 9987, at *2–4 (2d Cir. May 17, 2010); *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386–88 (Fed. Cir. 1998) (affirming dismissal of nonresident defendant for lack of personal jurisdiction and applying CPLR). As for the second inquiry, due process requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Minimum contacts can be established by showing either general or specific personal jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984). General jurisdiction exists if the defendant has "continuing and systematic" contacts with the forum. *Autogenomics,* 566 F.3d at 10 17. Specific jurisdiction exists if the plaintiff's claims "arise out of' or have a "causal nexus" with the defendant's conduct in the forum. *Id.*

Plaintiff bears the burden of demonstrating either general personal jurisdiction or specific personal jurisdiction. *Avocent Huntsville Corp. v. Aten Int'Z Co., LId,* 552 F .3d 1324, 1330 (Fed. Cir. 2008). Unlike a Rule 12 (b)(6) Motion, the court need not rely on a Plaintiff's pleadings; rather it may consider affidavits stating facts that disprove Plaintiff's allegations.

*Pilates, Inc. v. Pilates Institute, Inc.*, 891 F.Supp. 175, 178 n.2 (S.D.N.Y. 1995). In effect, the Court presumes lack of jurisdiction unless the asserting party can prove otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673 (1994). Thus, Plaintiff must affirmatively and specifically show the existence of whatever is essential to federal jurisdiction. If Plaintiffs fail to do so, this Court must dismiss the case. *Smith v. McCullough*, 270 U.S. 456, 459 (1926).

B.    THIS COURT DOES NOT HAVE GENERAL JURISDICTION OVER DEFENDANTS

A defendant can only be subject to general personal jurisdiction—and, therefore, be amenable to suit for any claim—where the business contacts with the forum are so extensive that they can be described as "continuous and systematic" or "substantial." *Helicopteros Nactionales*, 466 U.S. at 414-417; *see also Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (noting that general personal jurisdiction requires that a defendant is present in New York "not occasionally or casually, but with a fair measure of permanence and continuity." (internal quotation omitted)). Likewise, the Court can only exercise general jurisdiction over MASS and Mr. Moscovitch under the New York long-arm statute if Plaintiff proves "continuous, permanent and substantial activity" on the part of MASS and Mr. Moscovitch that constitutes "doing business" in New York. *Landoil Res. Corp. v. Alexander & Alexander Servs. Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990). The Second Circuit characterizes the test for general jurisdiction as a "simple pragmatic one" that focuses on "the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." *Id*.

Although Plaintiff admits that both MASS and Mr. Moscovitch are not residents of New York,[1] Plaintiff claims that jurisdiction is proper because MASS and its president, Mr. Moscovitch, (1) served process on Humanscale in New York in the 9X Litigation that was then proceeding in Texas and (2) conducted a sale of MASS products to Bloomberg L.P. in between 1993 and 1995.[2] (Complaint at ¶¶ 5, 11-12). As an initial matter, a one-time service of a complaint on a defendant in New York for a case proceeding in Texas cannot possibly qualify as "continuous, permanent and substantial activity" that constitutes "doing business" in New York. *Landoil Res. Corp.,* 918 F.2d at 1043. This leaves Plaintiff with its sole allegation that sales were made to Bloomberg L.P. in New York upwards of 20 years ago. (Complaint at ¶ 11). Such alleged activity cannot qualify as "continuous and systematic general business contacts." *See Helicopteros*, 466 U.S. at 416. Rather, Defendants' activities are a classic case of sporadic and insubstantial contacts with New York insufficient to establish general jurisdiction. Defendants' contacts with New York are far more limited than the types of contacts found to be insufficient for general jurisdiction in other cases.

In *Helicopteros,* the Supreme Court rejected the assertion of personal jurisdiction over a Columbian defendant despite the following contacts with the Texas forum: (1) defendant sent its chief executive officer to Texas to negotiate a contract for the helicopter services at issue; (2) defendant accepted $5 million in payments from a Texas bank; (3) defendant purchased 80% of its helicopter fleet, spare parts, and accessories (over $4 million) from a Texas business; and (4)

---

[1] Plaintiff pleads in its complaint that MASS is "a corporation organized and existing under the laws of Ontario, Canada" and that Mr. Moscovitch is "a resident of Ontario, Canada." (Complaint at ¶¶ 2-3). *See also* Wilk Decl. at ¶¶ 2-3 (noting that MASS's principal place of business is in Toronto, Canada)).

[2] Plaintiff makes no allegation that Mr. Moscovitch sold products to Bloomberg L.P. outside his role as president of MASS.

defendant sent its employees to Texas for training related to the helicopters and equipment. 466 U.S. 408, 411,418-19 (1984).

In *Autogenomics,* the Federal Circuit rejected the assertion of general jurisdiction over the British defendant despite the following contacts with the California forum: (1) defendant visited California to negotiate license agreement with plaintiff; (2) defendant entered into ten license agreements under the patent-in-suit to California businesses; (3) defendant entered a collaborative development and "supply agreement" unrelated to the patent-in-suit with a California business; (4) defendant attended three conferences in California; (5) Defendant made 20 sales to California businesses totaling about 1% of defendant's total revenue; and (6) defendant published a technical article on a website publicly available to California residents. 566 F.3d at 1017. Despite the numerous contacts, the Federal Circuit held that "nothing here exceeds the commercial contacts that the Supreme Court held were insufficient in *Helicopteros."* *Id.* at 1018.

In *Campbell Pel Co.* v. *Miale,* the Federal Circuit rejected assertion of general jurisdiction over a California defendant despite the following contacts with the Washington forum: (1) defendant operated a website to advertise and sell its products; (2) defendant sold about 2% of the patented products to customers in Washington; (3) defendant attended a convention in Washington where she demonstrated patented products, accepted two sales orders, and accused plaintiff of infringement; and (4) defendant sent a patent infringement notification letter to the Washington defendant. 542 F.3d 879, 881-84 (Fed. Cir. 2008).

In the present case, and as set forth above, MASS has never owned or maintained an office or facility in New York. (Wilk Decl. at ¶ 4). MASS is not registered to do business in New York. *(Id.* at ¶ 5). MASS has no property located in New York. *(Id.* at ¶ 7). MASS is not

required to pay and does not pay taxes in New York. (*Id.* at ¶ 6). MASS has no telephone listings or addresses in New York. (*Id.* at ¶ 8). MASS has no bank accounts located in New York. (*Id.* at ¶ 9). MASS has no employees in New York. (*Id.* at ¶ 10). MASS has no relationships with sales agents or distributors in New York. *(Id.* at ¶ 11). MASS does not solicit business or advertise in New York. (*Id.* at ¶ 12). No officers or agents of MASS have visited New York on business in over six years. (*Id.* at ¶ 13). MASS operates a website to advertise and sell its products (www.massedi.com). (*Id.* at ¶ 14). The website is generally available on the Internet and is not directed to New York residents. (*Id.*). In 2009, 2011, and 2012, MASS had no product sales recorded in New York. (*Id.* at ¶ 15). Between 2005 and 2012, MASS had 172 sales in New York that were not solicited by MASS but were instead the result of support services and replacement parts offered by MASS and sought out by persons owning MASS products. (*Id.* at ¶ 16). This activity represents a miniscule fraction of MASS's total sales during this period. (*Id.*). Plaintiff alleges that Defendants made sales to Bloomberg L.P. and allege certain facts pertaining to those sales in the Complaint. (Complaint at ¶5, 10-14). Without agreeing with Plaintiff's allegations stated therein, sales were made to Bloomberg L.P. during or prior to 1999 and have not continued since that time. (*Id.* at ¶ 17).

MASS's, and by extension its president Mr. Moscovitch's, sporadic and insubstantial contacts with New York do not rise to the level of contacts that were rejected as insufficient in *Helicopleros, Autogenomics,* and *Campbell Pel.*

Additionally, to the extent that Plaintiff relies on the sales activity of MASS to establish personal jurisdiction of Mr. Moscovitch, Plaintiff has not plead that Mr. Moscovitch is the alter-ego of MASS or that the corporate veil should be pierced so as to attribute MASS's contacts with New York to Mr. Moscovitch. Because plaintiff "has not alleged any facts that would support

8

such a finding. . . . [Plaintiff] fails to establish general jurisdiction over [Mr. Moscovitch]." *Malmsteen v. Universal Music Group, Inc.*, No. 10-cv-3955, 2012 U.S. Dist. LEXIS 82969, at *14 (S.D.N.Y. June 14, 2012) (declining to attribute the contacts of another party to the defendant where plaintiff had not alleged any facts supporting piercing the corporate veil).

Accordingly, this Court does not have general jurisdiction over MASS or Mr. Moscovitch.

## C.    THIS COURT DOES NOT HAVE SPECIFIC JURISDICTION OVER DEFENDANTS

When a defendant is not subject to general personal jurisdiction, a district court may exercise specific personal jurisdiction only if: "(1) the defendant purposefully directed the activities at residents of the forum; (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Autogenomics,* 566 F.3d at 1018. Moreover, New York's long arm statute, N.Y. C.P.L.R. § 302(a), requires that Plaintiff's cited cause of action "arise[] from" an enumerated act. *See Helicopteros Nacionales*, 466 U.S. at 414 n.8; *Rosner Bresler Goodman & Golden v. GPA Inc.*, No. 95-cv-2652, 1996 U.S. Dist. LEXIS 7435, at *5 (S.D.N.Y. May 29, 1996) (citing Storch v. Vigneau, 162 A.D.2d 241, 242, 556 N.Y.S.2d 342, 343 (N.Y. 1st Dep't 1990) (noting that the cause of action "must be directly related to, and arise from the business" transacted in New York)); *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645 (N.Y. 1981) (noting that plaintiff must demonstrate "some articulable nexus between the business transacted and the cause of action"). *See also Burger King Corp. v. Rudezewicz*, 471 U.S. 462, 472-73 (1985) (noting that a court may exercise specific jurisdiction over a nonresident defendant if "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.").

1. Relevant Jurisdictional Contacts Relate to Enforcement or Defense of the Patent

In an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, "the relevant activities are those that the defendant purposefully directs . . . at the forum which ***relate in some material way to the enforcement or the defense of the patent.***" *Autogenomics,* 566 F.3d at 1019-20 (emphasis added).  The Federal Circuit has explained that:

> [A]n action for a declaratory judgment "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit," and that the relevant inquiry for specific jurisdiction is "to what extent . . . the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the declaratory judgment claim arises out of or relates to those activities."  Thus, only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action.

*Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (citations omitted). Moreover, "only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Autogenomics*, 566 F.3d at 1020.  In a declaratory judgment action, the claim does not arise out of making, using, selling, offering to sell, or importing potentially infringing products in the forum, and such facts are not sufficient to establish specific jurisdiction. *Avocent,* 552 F.3d at 1332. Likewise, the mere sale of a defendant's products—whether covered by patents-in-suit or not—is not sufficient to establish specific personal jurisdiction in a declaratory judgment suit.  *Avocent,* 552 F.3d at 1338.

The Complaint's assertions regarding sales to Bloomberg, L.P. are not relevant to specific jurisdiction in this declaratory judgment action simply because those activities were not enforcement or defense efforts related to the patent-in-suit. (Complaint at ¶¶ 5, 11-12).  At best, they relate to the patentee's own commercialization efforts, which the Federal Circuit has stated

are irrelevant for determining jurisdiction. *Autogenomics*, 566 F.3d at 1020. Accordingly, this Court does not have specific jurisdiction over MASS or Mr. Moscovitch.

2. Enforcing the Patent in Texas Does Not Subject Defendants to Specific Jurisdiction in New York

Enforcing the patent-in-suit outside of the forum does not subject Defendants to specific personal jurisdiction in the forum. *Radio Sys. Corp.* v. *Accession, Inc.,* 638 F.3d 785, 792 (Fed. Cir. 2011) (affirming district court's Rule 12(b)(2) dismissal for lack of personal jurisdiction and noting that the Court "made clear in *Avocent* that enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum, and that decision is controlling here"); *Avocent,* 552 F.3d at 1339 ("We are aware of no precedent that holds that the filing of a suit in a particular state subjects that party to specific jurisdiction everywhere else").

In the present case, the Complaint's allegations concerning enforcement or defense of the patent-in-suit are limited to allegations that: (1) Defendants filed suit in the Eastern District of Texas alleging that Plaintiff infringed the patent-in-suit and (2) Defendants served Plaintiff—who is located in New York—with service in that case. (Complaint at ¶¶ 5, 15). Plaintiff makes no allegation that Defendants have attempted to enforce the patent-in-suit in a New York court. Defendants have never filed a lawsuit in New York relating to the patent-in-suit. Defendants' only enforcement activities regarding the patent-in-suit have been outside this forum.

The Federal Circuit has also rejected assertions of specific jurisdiction based on a foreign defendant's communications directed at plaintiffs in the forum concerning certain enforcement-related activities. For example, a foreign defendant may notify a party of alleged infringement and enter into unsuccessful licensing negotiations with the accused infringer without being subject to specific jurisdiction in the accused infringer's forum. *Hildebrand* v. *Steck Mfg. Co.,*

*Inc.,* 279 F.3d 1351, 1356 (Fed. Cir. 2002) (reversing district court's denial of Rule 12(b)(2) motion to dismiss and holding there was no specific jurisdiction where "[a]ll of [defendant's] documented contacts were for the purpose of warning against infringement or negotiating license agreements, and he lacked a binding obligation in the forum"). Even beyond simple service of a complaint, settlement negotiations are also unlikely to be used as jurisdictional contacts because of the policy favoring settlements. *See Red Wing Shoe Co., Inc.* v. *Rockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1361 (Fed. Cir. 1998) (citing *Digi-Tel Holdings. Inc.* v. *Proteq Telecomms. (PTE), Ltd,* 89 F.3d 519, 524 (8th Cir. 1996) ("Courts have hesitated to use unsuccessful settlement discussions as 'contacts' for jurisdictional purposes")).

Plaintiff may not rely on service of the complaint or other communications with Defendants regarding Defendants' allegations of infringement or unsuccessful post-suit licensing and settlement negotiations to establish specific jurisdiction. In fact, the Complaint does not allege any such communications or other contacts connecting Defendants' activities in the Texas litigation to New York. Accordingly, this Court does not have specific jurisdiction over MASS or Mr. Moscovitch.

3. Exercising Jurisdiction in New York Would Offend Fair Play and Substantial Justice

Even if the Court finds that sufficient contacts exist based on Defendants' enforcement activities in Texas, the specific jurisdiction analysis is not yet over. Defendants will be able to challenge the third prong of the specific jurisdiction analysis, namely that the "assertion of personal jurisdiction is reasonable and fair." *Autogenomics,* 566 F.3d at 1018. "With respect to the last prong, the burden of proof is on the defendant, which must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-

factor test articulated by the Supreme Court in *Burger King." Id.* at 1018 (citing *Burger King Corp.* v. *Rudzewicz,* 471 U.S. 462,476 (1985)).

The five *Burger King* factors for unreasonableness are: (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies. *Burger King,* 471 U.S. at 477.

In the present case, the interstate judicial system's interest in efficiently resolving this issue strongly supports dismissing this Complaint. Defendants have consented to jurisdiction in Texas and has litigated the same patent-in-suit against the Plaintiff in Texas. (Complaint at ¶¶ 15-24). Defendants also fully litigated the patent-in-suit against other parties there and have litigated the patent-in-suit through claim construction, a jury trial, and a judgment of infringement and validity of the patent. Plaintiff's filing of this action in New York is an unnecessary waste of the judicial system's limited resources. The exercise of jurisdiction in New York is not reasonable or fair. Accordingly, this Court does not have specific jurisdiction over MASS or Mr. Moscovitch.

### D.    RULE 4(k)(2) DOES NOT PROVIDE ALTERNATIVE GROUNDS FOR JURISDICTION OVER MASS

Fed. R. Civ. P. 4(k)(2) approximates a federal long-arm statute allowing district courts to exercise personal jurisdiction over a foreign defendant that lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole. *Merial LId.* v. *Cipla Ltd.,* 681 F.3d 1283, 1293-94 (Fed. Cir. 2012). "If the defendant contends he cannot be sued in the forum state but refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Id.* at 1294. Rule 4(k)(2) may also be considered even when the

plaintiff affirmatively pleads a different basis for personal jurisdiction.  *Id.* at 1296.  The

defendant may defeat Rule (4)(k)(2) by identifying an independent basis for jurisdiction in the

alternative forum.  *Id.* at 1295.

In the present case, Defendants will defeat Rule 4(k)(2) because Defendants are properly

subject to personal jurisdiction in the Eastern District of Texas and there is an independent basis

for jurisdiction there.  Accordingly, this Court may not use Fed. R. Civ. P. 4(k)(2) to exercise

jurisdiction over MASS or Mr. Moscovitch.

## V.      MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS

### A.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(5), a court may dismiss an action against

one or more defendants on the ground of "insufficient service of process."  *In re South African*

*Apartheid Litigation*, 643 F.Supp.2d 423,431 (S.D.N.Y. 2009).  "[I]n considering a motion to

dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside

the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am.*

*Holding Corp.*, 191 F.Supp.2d 382,387 (S.D.N.Y.2002).  When a defendant raises a Rule

12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of

proving its adequacy.  *Mende v. Milestone Technology, Inc.*, 269 F.Supp.2d 246, 251 (S.D.N.Y.

2003).  "Before a federal court may exercise personal jurisdiction over a defendant, the

procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v.*

*Trammochem*, 451 F.3d 89, 94 (2d Cir.2006) (internal quotation marks and citation omitted).

Defective service cannot be ignored on a mere assertion that a defendant had actual notice.

*Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F.Supp.2d 585, 589

(S.D.N.Y. 2006).

B.    PLAINTIFF'S ATTEMPTED SERVICE IS DEFECTIVE UNDER FED. R. CIV.
      P. 4, UNDER THE HAGUE CONVENTION, AND UNDER CANADIAN LAW.

The Complaint should be dismissed because Plaintiffs never attempted to effectuate valid

service pursuant to Fed. R. Civ. P. 4. Rule 4(f) of the Federal Rules of Civil Procedure governs

service upon individuals and corporations not within any judicial district of the United States,

and permits service upon a foreign corporation "by any internationally agreed means of service

that is reasonably calculated to give notice, such as those authorized by the Hague convention on

the Service Abroad of Judicial and Extrajudicial Documents [Hague Service Convention]." Fed.

R. Civ. P. 4(f)(1).[3] Because the United States and Canada are both parties to the Hague Service

Convention, Plaintiffs were obligated to affect service on MASS and Mr. Moscovitch in

accordance with the Convention's terms. *See* Hague Conference on Private International Law,

Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial

Documents in Civil or Commercial Matters, Status Table, *available at*

http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last accessed January 11,

2013); *Volkswagenwerk Aktiengesellschaft* v. *Schlunk,* 486 U.S. 694, 698 (1988) ("Compliance

with the Convention is mandatory in all cases to which it applies."); *Marcantonio* v. *Primorsk*

*Shipping Corp.,* 206 F. Supp. 2d 54, 58 (D. Mass. 2002) ("[T]o make effective service in a

country that has joined the Hague Convention, a plaintiff must follow the provisions of the treaty

. . . Because Canada entered into the Hague Convention, its provisions are mandatory."); *see also*

Fed. R. Civ. P. 4 Advisory Committee Notes, 1993 Amendments ("Use of the Convention

---

[3] Fed. R. Civ. P. 4(h)(2) addresses serving a corporation outside the United States and permits service "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."

procedures, when available, is mandatory if documents must be transmitted abroad to effect service.").

Plaintiff has attempted to effectuate service under the Hague Convention's informal methods. (*See* Returns of Summons at Docket Nos. 4, 5, 7, and 8 (each noting that service was "pursuant to Article 10 of the Hague Service Convention.").  The informal methods of service allowed under the Hague Convention is set forth in Article 10, and reads in relevant part as follows:

> **Provided the State of destination does not object**, the present Convention shall not interfere with -- . . . (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Convention on Service Abroad, Nov. 15, 1965, art. 10, 20 U.S.T. 362, T.I.A.S. 6638, 658 U.N.T.S. 163 (emphasis added) [hereinafter "Hague Convention"].  "To determine whether the destination country objects to a particular form of service, courts have looked to the service laws of that country to determine whether the employed method of service would be valid therein." *Jerge v. Ashton Potter*, No. 99-cv-0312E, 2000 U.S. Dist. LEXIS 11648, at *3 (W.D.N.Y. Aug. 11, 2000).  *See also Nuance Communications, Inc. v. Abyy Software House*, 626 F.3d 1222, 1238 (Fed. Cir. 2010).  "The federal system of Canada requires examining the law of the Province of Ontario. The relevant rule provides that service on a corporation is made 'by leaving a copy of the document with an officer, director, or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the business.'" *Jerge* at *4 (citing Ontario Rule of Civil Procedure 16.02).  Likewise, Ontario Rule of Civil Procedure 16.02(1)(a), regarding service on an individual, requires that the service be made "on an individual, other than a person under disability, by leaving a copy of the document with the individual."    Ontario    Rule    of    Civil    Procedure    16.02(1)(a),    available    at

http://www.canlii.org/en/on/laws/regu/rro-1990-reg-194/latest/ (last accessed January 11, 2013).

As such, whether service was attempted on MASS or Mr. Moscovitch, it must have been left

with an individual. The record shows that Plaintiff did not do so.

In the present case, Plaintiffs did not comply with Ontario R. Civ. P. 16.02(1)(a) or

16.02(l)(c). As explained by Mr. Moscovitch and Mr. Tameshtit in their attached declarations,

Plaintiff's process server simply left a copy of the service documents outside the office of MASS

without speaking to Mr. Moscovitch or leaving the documents with anyone in particular. (Ex. B,

January 11, 2013 Declaration of J. Moscovitch at ¶¶ 2-7 ("I have not spoken with or had any

contact with anyone attempting to serve papers on me in this case whatsoever."); Ex. A, January

11, 2013 Declaration of A. Tameshtit at ¶ 2 ("On the late afternoon October 24, 2012, as I was

returning to Mass Engineered's offices in Ontario, Canada, I noticed that an envelope had been

left outside the building of Mass Engineered's offices.")).

Plaintiff has presented at least three versions of how service was completed that are

simply not credible in view of Mr. Moscovitch's and Mr. Tameshtit's testimony. First, on

November 19, 2012, Mr. Singh of APS International Ltd. submitted an affidavit of service

stating that he completed service on MASS "[b]y delivering them into the hands of an officer or

managing agent whose name and title is Jerry Moscovitch, Officer of the Company." (Docket

No. 4). Mr. Singh also stated that he served Mr. Moscovitch in his personal capacity "[b]y

personally delivering them into the hands of the person to be served." (Docket No. 5). As Mr.

Moscovitch explains, these allegations are false. (Moscovitch Decl. at ¶¶ 2, 4-6). As such,

counsel for Defendants promptly sent a letter explaining that Mr. Singh's affidavits were

incorrect and asking to confirm that Mr. Singh "actually handed the documents to Mr.

Moscovitch." (Ex. F, November 20, 2012 Letter from B. Levi, counsel for MASS and Mr. Moscovitch, to A. Steinert, counsel for Humanscale).[4]

After Defendant's request for confirmation that Mr. Singh hand-served Mr. Moscovitch, counsel for Humanscale presented a second version of events, stating that "[b]ased on the process server's notes, our present understanding is that he spoke to a person at Mass who identified himself as 'Jerry' though [sic] an upper-level window, but who refused to come downstairs to accept service by hand. We understand that the process server then left the service documents at the entrance." (Ex. G, December 18, 2012 Email from A. Steinert, counsel for Humanscale, to B. Levi, counsel for MASS and Mr. Moscovitch). This version of events was also false, as confirmed by Mr. Moscovitch, and particularly not credible given that the "windows in [Mr. Moscovitch's] office facing the street cannot be opened, making it very difficult if not impossible to speak to anyone outside these windows." (Moscovitch Decl. at ¶ 7 ("This allegation is completely untrue and I am unaware of any events that this allegation could possibly refer to.")).

As of January 10, 2013, a *third* version of events has been offered with the filing of affidavits of Leslie Ramirez, "the manager of the Toronto, Ontario process service office" who notes that "Satnam Singh, the server named in this affidavit, is [her] **ex-employee**." (Docket Nos. 7 and 8 at 1 (emphasis added)). Here, Ms. Ramirez relays Mr. Singh's notes second-hand, which claim that "Jerry Moscovitch . . . came to door [] refused to open door and accept documents." (Docket No. 8 at 4. *See also* Docket No. 7 (noting that "Jerry Moscovich appeared

<hr/>

[4] Notwithstanding Defendants' November 20, 2012, letter, Plaintiff proceeded to incorrectly represent to this Court in its November 21, 2012, request for an adjournment of the case management conference that "As indicated by the proofs of service filed in this matter (Doc. Nos. 4 and 5), Defendants were served with the Summons and Complaint in Toronto, Canada, pursuant to the Hague Convention on October 24, 2012." (Docket No. 6 at 1). As discussed herein, that representation is incorrect.

in front of me and refused to open door [sic] and accept package.")).  This allegation is also false, as confirmed by Mr. Moscovitch.  (Moscovitch Decl. at ¶ 6 ("The allegation that I refused to open the door and accept documents from Mr. Singh is false, and I have no knowledge of any events that this allegation could possibly refer to.")).

Given Plaintiff's inconsistent versions of events and the flat denial by Mr. Moscovitch that he was served with process in this case, the Plaintiff can only establish that a copy of service documents were left at the premises of MASS.  Leaving documents in front of a building does not comport with the requirements of Ontario Law that service be affected on an individual.  Ontario R. Civ. P. 16.02(1)(a) or 16.02(l)(c).  Plaintiff's attempt to effect service on MASS and Mr. Moscovitch is therefore defective under Ontario R. Civ. P. 16.02 and under Fed. R. Civ. P. 4.  Accordingly, Plaintiff's complaint should be dismissed for improper service of process.

## VI.  THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE

### A.  LEGAL STANDARD

Federal Rule 12(b)(3) allows a defendant to move to dismiss a claim based on improper venue.  When considering a motion to dismiss for improper venue, the Court must accept the facts alleged in the Complaint as true and draw all reasonable inferences in favor of the non-moving party.  *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004).  However, the Court may rely on facts and consider documents outside of the Complaint.  *See id.*; 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, at 324 (3d ed. 2004) ("Practice on a motion under Rule 12(b )(3) is relatively straight-forward. All well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits.").  Further, once an objection to venue has been raised, Plaintiff bears the burden of proving that venue is proper by a preponderance of the

evidence.  *See French Transit, Ltd. v. Modern Coupon Sys.*, Inc., 858 F. Supp. 22, 25 (S.D.N.Y. 1994); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).

B.    THIS DISTRICT IS NOT A PROPER VENUE UNDER 28 U.S.C. § 1391

A proper analysis shows that this District is not a proper venue. The general venue statute provides that:

> Venue in General.-A civil action may be brought in--
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

This District is not a proper venue for the following reasons.  *First,* under 28 U.S.C. § 1391(b)(l), venue in this District is not proper because neither MASS nor Jerry Moscovitch are residents of New York.  (Complaint at ¶¶ 2-3).  *Second*, under 28 U.S.C. § 1391(b)(2), venue in this District is not proper because the Complaint alleges only that Defendants' service of process regarding the Texas litigation asserting the patent-in-suit and Defendants' alleged sales to Bloomberg L.P. in New York give rise to the declaratory judgment action—neither of which are acts arising from this action as articulated by the Federal Circuit. (Complaint. ¶ 5). As previously noted, in a declaratory judgment action, the claim does not arise out of making, using, selling, offering to sell, or importing potentially infringing products in the forum.  *Avocent*, 552 F.3d at 1332.  Plaintiff's allegations regarding the sale, offer for sale, and purchase of products in the District do not give rise to the claim and do not support proper venue.  *Third,* 28 U.S.C. § 1391(b)(l), venue in this District is not proper because, as previously noted, neither MASS nor Mr. Moscovitch are subject to personal jurisdiction in this District.  Based on the allegations in

the complaint, Plaintiff has not demonstrated that any section of 28 U.S.C. § 1391 can be met.

Accordingly, Plaintiff's complaint should be dismissed for improper venue.

## VII.    CONCLUSION

For the foregoing reasons, the Court should enter an Order dismissing with prejudice the claims against Defendants MASS and Mr. Moscovitch under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(3) for improper venue, and Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

Dated:            January 14, 2013            Respectfully Submitted,


*/s/ Benjamin Levi*
Benjamin Levi
blevi@mckoolsmith.com
McKool Smith, P.C.
1999 K Street NW, Suite 600
Washington, D.C. 20006
Tel: (202) 370-8300
Fax: (202) 370-8344

**ATTORNEY FOR DEFENDANTS
MASS ENGINEERED DESIGN, INC.  AND
JERRY MOSCOVITCH**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing document was electronically filed on January 14, 2013, with the Clerk of Court using the CM/ECF system, and a copy of this document was served on the following as indicated:

> Adam Roger Steinert
> Fredrikson & Byron P.A.
> 200 South Sixth Street, Suite 4000
> Minneapolis, MN 55402
> E-mail: Asteinert@fredlaw.com
> **(VIA ELECTRONIC MAIL)**

> Jason Scott Charkow
> Winston & Strawn LLP (NY)
> 200 Park Avenue
> New York, NY 10166
> E-mail: Jcharkow@winston.com
> **(VIA ELECTRONIC MAIL)**

> Scott Richard Samay
> Winston & Strawn LLP (NY)
> 200 Park Avenue
> New York, NY 10166
> E-mail: Ssamay@winston.com
> **(VIA ELECTRONIC MAIL)**

> */s/ Benjamin Levi*
> Benjamin Levi
> blevi@mckoolsmith.com
> McKool Smith, P.C.
> 1999 K Street NW, Suite 600
> Washington, D.C. 20006
> Tel: (202) 370-8300
> Fax: (202) 370-8344

> **ATTORNEY FOR DEFENDANTS**
> **MASS ENGINEERED DESIGN, INC. AND**
> **JERRY MOSCOVITCH**