IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

HUMANSCALE CORPORATION

     Plaintiff,

v.

MASS ENGINEERED DESIGN, INC and
JERRY MOSCOVITCH

     Defendants.

Civil Action No. 2:12-cv-5988-AKH

**HUMANSCALE CORPORATION'S**

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

1. Introduction ........................................................................................................ 1

2. Background ......................................................................................................... 2

   A. The *Mass v. Ergotron* Litigation and the Bloomberg Prior Art ............................. 2

   B. The *Mass v. 9X Media* Litigation .......................................................... 4

3. Argument ............................................................................................................ 6

   A. Standards for Jurisdiction in Patent Declaratory Judgment Cases ......................... 6

   B. This Court has at Least Specific Personal Jurisdiction over Defendants ............... 8

      1. Defendants' Prior Art Activities in and Directed to New York .................. 8

      2. Defendants' Enforcement Activities in New York .................................. 11

   C. Jurisdictional Discovery Will Reveal Additional Evidence Supporting Personal Jurisdiction ............................................................................... 13

   D. Venue is Proper ........................................................................................ 14

4. Conclusion ........................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
    552 F.3d 1324 (Fed. Cir. 2008)..................................................................10, 11

*Best Van Lines, Inc., v. Walker*,
    490 F.3d 239 (2d Cir. 2007).................................................................................6

*Doe v. Arnett*,
    No. SACV 12-96-JST, 2012 U.S. Dist. LEXIS 107791 (C.D. Cal. Aug. 1, 2012) .................12

*Electronics for Imaging, Inc. v. Coyle*,
    340 F.3d 1344 (Fed. Cir. 2003)....................................................................6, 7, 9

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012)........................................................................4, 5

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)...........................................................................5

*In re Volkswagen of America Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..............................................................................5

*Int'l Sec. Exch., LLC, v. Chi. Bd. Options Exch., Inc.*,
    No. 06-cv-13445 (RMB)(THK), 2007 U.S. Dist. LEXIS 58790 (S.D.N.Y. Aug. 9, 2007) .................................................................................................................15

*Mass Engineered Design, Inc., and Jerry Moscovitch v. 9X Media, Inc., et al.*,
    No. 2:09-cv-358 (JRG) ("*Mass v. 9X Media*") .............................................. passim

*Mass Engineered Design, Inc., and Jerry Moscovitch v. Ergotron, Inc., et al.*,
    No. 2:06-cv-272 (LED) ("*Mass v. Ergotron*")............................................... passim

*Radio Sys. Corp. v. Accession, Inc.*,
    638 F.3d 785 (Fed. Cir. 2011)..............................................................................7

*S.E.C. v. Knowles*,
    87 F.3d 413 (10th Cir. 1996) .............................................................................10

STATUTES

28 U.S.C. § 1391(b) ................................................................................................14

35 U.S.C. § 287 ........................................................................................................14

C.P.L.R. § 302(a)(1) .................................................................................................6

**OTHER AUTHORITIES**

37 C.F.R. § 1.56(a) ....................................................................................................................10

Fed. R. Civ. P. 41(a) ...................................................................................................................5

## 1.     INTRODUCTION

This patent declaratory judgment action stems from accusations of infringement of U.S.

Patent No. Re. 36,978 ("the '978 patent") made by Defendants Mass Engineered Design, Inc.

("Mass"), and Jerry Moscovitch against Plaintiff Humanscale Corporation ("Humanscale") in a

prior litigation, which was dismissed without prejudice.  The '978 patent relates to computer

monitor display stands, and Defendants have alleged that its claims cover virtually any stand that

supports two computer monitors.  Humanscale contends that its products do not infringe the

patent claims and that the claims are both invalid over the prior art and unenforceable as a result

of Mass and Mr. Moscovitch's inequitable conduct before the Patent Office.

Defendants brought the instant motion to dismiss on the theory that, as residents of

Toronto, Canada, they are not subject to this Court's personal jurisdiction and venue is

improper.[1]  The motion should be denied outright because the Defendants' own prior art

commercial activities – the primary basis for Humanscale's invalidity and inequitable conduct

claims – occurred in and were directed to New York.  What is more, the witnesses and tangible

evidence related to those activities are located in the Southern District of New York, and

Defendants have availed themselves of this Court's subpoena power to obtain discovery of that

evidence in prior litigations enforcing the '978 patent.  Having purposely directed those activities

to this forum, Defendants cannot now complain about this Court's exercise of jurisdiction over

them, or venue in the one judicial district where the great weight of evidence is located and key

third-party witnesses can be compelled to appear for trial.

---

[1] Defendants previously also disputed the sufficiency of service of process.  (*See* Doc. No. 18 at 14-19.)  During the status conference before this Court on February 22, 2013, Defendants' counsel waived the arguments related to service.  As a result of that waiver, this memorandum addresses only the Defendants' challenges to jurisdiction and venue.

The evidence presently available to Humanscale is enough to satisfy it burden of making a *prima facie* showing that jurisdiction is proper. Accordingly, Defendants' motion should be denied. However, if the Court believes that additional evidence is necessary or proper, Humanscale respectfully requests in the alternative that it be granted limited discovery related to personal jurisdiction and venue.

## 2.     BACKGROUND

This declaratory judgment action is not the first lawsuit regarding the '978 patent, nor is it the first lawsuit between the Parties. Two prior litigations are particularly relevant to the pending motion and this Court's jurisdiction over the Defendants. The first was captioned *Mass Engineered Design, Inc., and Jerry Moscovitch v. Ergotron, Inc., et al.*, No. 2:06-cv-272 (LED) ("*Mass v. Ergotron*"), and the second was captioned *Mass Engineered Design, Inc., and Jerry Moscovitch v. 9X Media, Inc., et al.*, No. 2:09-cv-358 (JRG) ("*Mass v. 9X Media*"). Each of these cases was filed jointly by both Defendants in the U.S. District Court for the Eastern District of Texas. Humanscale was not a party to the *Mass v. Ergotron* case, but was one of thirty defendants named in the *Mass v. 9X Media* case. (*See* Niederluecke Decl. Exs. 1 & 2.)

### A.     The *Mass v. Ergotron* Litigation and the Bloomberg Prior Art

The *Mass v. Ergotron* litigation is particularly relevant to the Court's jurisdiction, because discovery in that case revealed that Mass and Mr. Moscovitch were not the true inventors of the '978 patent, at least not by themselves. Dual-monitor display stands of the type claimed by the patent had in fact been invented years early by Bloomberg L.P. ("Bloomberg"), and incorporated into commercial products that Mass made and sold to Bloomberg in New York, at Bloomberg's direction. Furthermore, even if Mr. Moscovitch had been the sole inventor of the products sold to Bloomberg, those sales occurred more than a year before the filing of his

original patent application, and thus constitute prior art that the Patent Office should have considered before issuing the '978 patent.

While much of the material related to the *Mass v. Ergotron* case is subject to a protective order, Humanscale is aware of certain non-confidential information from that litigation through its counsel Kurt Niederluecke, who was also counsel to defendant Ergotron in the prior case. (*See* Niederluecke Decl. ¶¶ 3-11 & Ex. 3.)  As alleged in Humanscale's Complaint, discovery in the *Mass v. Ergotron* case established that years before the filing of Mr. Moscovitch's original patent application, Mass and Mr. Moscovitch made and sold a dual-monitor display stand system for Bloomberg, which has been referred to both as the "LCD Dual Monitor Assembly" and as the "Bloomberg Terminal."  (*See* Doc. No. 1 at ¶¶ 5, 10-11; Niederluecke Decl. ¶ 5.)  Both the sales of the Bloomberg Terminal itself and various published literature describing the Bloomberg Terminal were made public more than a year before the filing of the application leading to the '978 patent, and thus constitute prior art (collectively the "Bloomberg prior art").  (*See* Doc. No. 1 at ¶¶ 10-11; Niederluecke Decl. ¶¶ 5-6.)  Through their involvement in creating it, Mass and Mr. Moscovitch certainly knew about the Bloomberg prior art before they applied for the '978 patent, but they chose to conceal it from the Patent Office.  (*See* Doc. No. 1 at ¶ 14.)

Bloomberg is a well-known New York company.  Discovery in the *Mass v. Ergotron* case showed that the Bloomberg employees who contributed to the invention of the dual-monitor display stands – but who were never given credit by Mass or Mr. Moscovitch – were located in the New York metro area, including Mayor Michael Bloomberg.  (*See* Doc. No. 1 at ¶ 14; Niederluecke Decl. ¶ 7.)  The prior art monitor display stands were likewise sold and used in New York, including at the New York Stock Exchange.  (*See* Niederluecke Decl. ¶ 8.)

Moreover, the litigation efforts to obtain discovery regarding the Bloomberg prior art took place in the Southern District of New York, and pursuant to the powers of this Court. Notably, Mass and Mr. Moscovitch retained New York counsel to assist them in seeking discovery from Bloomberg, including members of the New York office of Susman Godfrey, L.L.P. (*See* Niederluecke Decl. ¶¶ 9-10 & Ex. 4.) Defendants' counsel invoked the powers of this Court to issue at least two document subpoenas to Bloomberg, seeking production in New York of twenty-two categories of documents and things related to the invention of the subject matter of the '978 patent and Defendants' relationship with Bloomberg. (*Id.*) Defendants followed those subpoenas by actively deposing Bloomberg witnesses in the Southern District of New York. (*See* Niederluecke Decl. ¶ 10.)

### B.      The *Mass v. 9X Media* Litigation

After the *Mass v. Ergotron* litigation, Defendants filed another lawsuit in the Eastern District of Texas, this time against thirty separate named defendants. (*See* Niederluecke Decl. Ex. 1.) Defendants did not allege that the large group of defendants in the *Mass v. 9X Media* case had somehow acted in concert to infringe the '978 patent. Defendants' *9X Media* complaint made no allegation that its claims against Humanscale implicated the actions of any other defendant (*see id.* at ¶ 38), and indeed many of the named defendants are Humanscale's competitors.

While the *Mass v. 9X Media* case was pending, the Court of Appeals for the Federal Circuit delivered its opinion in *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), which held that:

> Claims against <u>independent defendants</u> (i.e., situations in which the defendants are not acting in concert) <u>cannot be joined under Rule 20's transaction-or-occurrence test</u> unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts. … Unless there is an actual link between the facts underlying each claim of infringement,

> independently developed products using differently sourced parts are not part of
> the same transaction, even if they are otherwise coincidentally identical.

*Id.* at 1359 (emphasis added). In light of the new standard set forth in *In re EMC*, Humanscale and many of the other defendants to the *Mass v. 9X Media* case filed a motion to sever the causes of action against them, with the intention of then filing motions to transfer venue for each case to the jurisdiction where the defendant's witnesses and documents were located pursuant to *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) and *In re Volkswagen of America Inc.*, 545 F.3d 304 (5th Cir. 2008). In Humanscale's case, the prior litigation would have been transferred to this District, where the evidence related to Humanscale's alleged infringement and the evidence related to the Bloomberg prior art is located.[2]

While Mass and Mr. Moscovitch originally opposed the motion to sever, on July 30, 2012, they changed course and asked the Texas court to dismiss the claims against Humanscale and the other defendants without prejudice. (Niederluecke Decl. Ex. 6.) The parties then filed a stipulation dismissing the *Mass v. 9X Media* litigation under Rule 41(a)(1)(A)(ii). (Niederluecke Decl. Ex. 7.) Contemporaneously with that dismissal, Humanscale filed this declaratory judgment action to accomplish the same result as its planned motion to transfer venue to the Southern District of New York – *i.e.*, to resolve Defendants' infringement allegations against Humanscale for once and for all, in the forum where the operative facts occurred and the evidence is located. (*See generally* Doc. No. 1.)

---

[2] Humanscale notes that Defendants have never identified an alleged nexus between the facts of this case and the Eastern District of Texas, despite clear questions from this Court on that point during the status conferences held on January 25, 2013, and February 22, 2013.

**3.     ARGUMENT**

**A.     Standards for Jurisdiction in Patent Declaratory Judgment Cases**

Personal jurisdiction in a patent declaratory judgment case is a matter of Federal Circuit law. *See, e.g., Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003). This Court's jurisdiction can be established through either general or specific personal jurisdiction.

> Under general jurisdiction, the exercise of jurisdiction is proper where the defendant has continuous and systematic contacts, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984), with the forum state, even if those contacts are not related to the cause of action. …

> Determining whether specific personal jurisdiction over a nonresident defendant is proper entails two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due process.

*Id.* at 1349.

Under the relevant portion of New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc., v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

> With respect to the first part of the test for jurisdiction under section 302(a)(1), New York courts define "transact[ing] business" as purposeful activity – some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. …

> If the defendant is transacting business in New York, the second half of the section 302(a)(1) inquiry asks whether the cause of action "aris[es] from" that business transaction or transactions. New York courts have held that a claim "aris[es] from" a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted.

*Id.* at 246, 249 (internal citations and quotations omitted).

The Federal's Circuit's constitutional due process analysis for specific personal jurisdiction is similar to the analysis under New York's long-arm statute:

> This court has adopted a three-factor test embodying the Supreme Court's jurisprudence on specific personal jurisdiction. To determine whether jurisdiction over an out-of-state defendant comports with due process, we look to whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair.

*Elecs. for Imaging*, 340 F.3d at 1350. In the patent declaratory judgment context, a claim arises out of Defendants' activities directed at New York residents if those activities "relate to the enforcement or defense of the patent," *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011), or otherwise "arise out of or are related to [Plaintiff's] claims that the [challenged] patent is invalid," *Elecs. for Imaging*, 340 F.3d at 1351.

Once the Plaintiff has shown the existence of such minimum contacts, the burden shifts to Defendants "to present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* at 1351-52 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

> The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 1352. Finally, it bears noting that if the Court rules on the pending motion "based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Id.* at 1349.

### B.    This Court has at Least Specific Personal Jurisdiction over Defendants

Setting aside the question of general personal jurisdiction, Defendants Mass and Jerry Moscovitch are both subject to specific personal jurisdiction because of their prior art activities in and directed to New York, out of which Humanscale's invalidity and inequitable conduct claims arise. In addition to being subject to jurisdiction because of those substantive factual activities, Defendants are further subject to the Court's personal jurisdiction because they have availed themselves of the Court's power to obtain discovery in connection with their prior efforts to enforce the '978 patent. Defendants' memorandum of law is conspicuously silent with regard to the connection between their relationship with Bloomberg and Humanscale's invalidity claims. Defendants' memorandum ignores their prior invocation of this Court's subpoena powers altogether.

#### 1. *Defendants' Prior Art Activities in and Directed to New York*

As discussed above, the Bloomberg prior art is one of the cornerstones of Humanscale's invalidity claim. (*See* Doc. No. 1 at ¶¶ 5, 10-13.) That prior art was created as a result of Defendants purposefully availing themselves of the benefits of doing business in New York – *i.e.*, selling dual-monitor stands to Bloomberg, made pursuant to Bloomberg's specifications, for use in New York at places such as the New York Stock Exchange. Furthermore, Defendants' willful failure to disclose the Bloomberg prior art to the Patent Office is the basis of Humanscale's inequitable conduct defense. (*See* Doc. No. 1 at ¶¶ 10, 13-14, 35-37.)

Both of these defenses were raised in the *Mass v. Ergotron* and *Mass v. 9X Media* litigations. Mass and Moscovitch cannot colorably argue that they failed to appreciate the connection between their relationship with Bloomberg and Humanscale's declaratory judgment claims for invalidity and unenforceability, which were also spelled out in detail in Humanscale's

Complaint. (*See* Doc. No. 1 at ¶¶ 5, 10-14, 35-37.) Despite being on full notice of the subject matter of Humanscale's claims, Defendants attempt to rely on cases holding that sales of *licensed* products are not relevant to establishing specific personal jurisdiction for a patent declaratory judgment action.[3] Those cases are inapplicable to the facts at hand, which deal with the Defendants' own *prior art* activities.

By definition, a sale of a patented, licensed product must occur after the patentee has obtained a patent. As such, it has little to no bearing on the core issues raised in a declaratory judgment action, *i.e.*, the plaintiff's claims of non-infringement by its own products and invalidity and/or unenforceability of the patent claims. In contrast, Defendants' relationship with Bloomberg, which occurred before the '978 patent application was filed, goes to the very heart of Humanscale's invalidity and unenforceability claims. The law is clear that facts related to invalidity and unenforceability give rise to specific personal jurisdiction in a patent declaratory judgment case. For example, in *Electronics for Imaging, Inc. v. Coyle*, the Federal Circuit held that out-of-state defendants were subject to personal jurisdiction in California because their representatives had visited the state "to demonstrate the technology that formed the subject matter of the '746 patent" and "[t]hese contacts with California made by [the defendants] ***clearly arise out of or are related to [the plaintiff's] claim that the '746 patent is invalid***." 340 F.3d at 1351 (emphasis added).

Likewise, there can be no doubt in this case that Humanscale's invalidity and unenforceability claims "arise out of or are related to" Defendants' prior art sales to Bloomberg in New York and Defendants' other activities in and directed to New York in connection with the Bloomberg relationship. Indeed, Humanscale's Complaint expressly identifies the

---

[3] Such sales may, of course, be relevant to establishing general personal jurisdiction. *See, e.g.*,

Bloomberg prior art as a key basis for Humanscale's invalidity claims. (*See* Doc. No. 1 at ¶¶ 5, 10-14.) Humanscale's Complaint further identifies Mass and Moscovitch's failure to disclose the Bloomberg prior art as *the* basis for its unenforceability defense. (*See* Doc. No. 1 ¶¶ 14, 35-37.)

Defendants also complain that Mass's sales activity cannot be attributed to Mr. Moscovitch. That argument is simply wrong, for at least three reasons. First, discovery in the *Mass v. Ergotron* case revealed that Mass is closely-held company owned by Mr. Moscovitch, with only a handful of employees. (*See* Niederluecke Decl. ¶ 11.) Mr. Moscovitch himself was the principal actor with regard to the Bloomberg relationship. (*See id.*) Under settled law, "employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." *S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Second, Mr. Moscovitch is the named inventor on the '978 patent, and as such he had a *personal* duty to disclose his knowledge of the Bloomberg art to the Patent Office. *See, e.g.*, 37 C.F.R. § 1.56(a). Third, Mass & Mr. Moscovitch consistently held themselves out as a single entity in the prior litigations. (*See, e.g.*, Niederluecke Decl. Ex. 1 at ¶1 ("Mass Engineered Design, Inc. and Jerry Moscovitch are referred to herein collectively as 'MASS.'"), ¶33 ("Collectively, JERRY MOSCOVITCH and MASS ENGINEERED DESIGN, INC. hold all rights and interests in the '978 Patent.").) Given the inextricably intertwined nature of Mass and Mr. Moscovitch's alleged interests in the '978 patent, and Mr. Moscovitch's personal involvement in the acts out of which Humanscale's

---

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008).

defenses arise, Defendants cannot complain about this Court exercising personal jurisdiction over him in his individual capacity.

Humanscale's invalidity and inequitable conduct claims arise directly out of Defendants' prior art activities in and directed to residents of New York. For that reason alone, Defendants' motion should be denied outright and the Court should exercise specific personal jurisdiction over Mass and Mr. Moscovitch.

## 2. *Defendants' Enforcement Activities in New York*

In addition to the prior art activities themselves, Defendants have purposefully availed themselves of the benefits of this jurisdiction – and the powers of this very Court – in order to enforce and defend the validity of the '978 patent. Having taken advantage of New York's courts when it suits them, Defendants cannot now complain of being subject to this Court's jurisdiction.

While the Federal Circuit has stated that "letters threatening suit for patent infringement sent to the alleged infringer by themselves do not suffice to create personal jurisdiction," *Avocent*, 552 F.3d at 1333, Defendants have done far more than merely send threatening letters to New York companies. As a preliminary matter, it bears noting that Defendants have actually sued multiple companies resident in New York for alleged infringement of the '978 patent. In the *Mass v. 9X Media* litigation, by Mass's own admission, at least five of the defendants were New York residents, and four of those defendants were served in New York. (*See, e.g.*, Niederluecke Decl. Ex. 1 at ¶¶ 5, 6, 16, 18, 25.) But beyond that, in the *Mass v. Ergotron* litigation, Defendants hired and used counsel within the Southern District of New York to take document and deposition discovery from New York residents related to the Bloomberg prior art. (Niederluecke Decl. ¶¶ 9-10 & Ex. 4.) Having used the subpoena power of this Court to compel the production of documents from third party witnesses in New York, Defendants have

consented to this Court's jurisdiction in any related matters. Because the discovery sought by Defendants' subpoena related to the Bloomberg prior art and the validity of the '978 patent, and those same facts form the core of Humanscale's invalidity and inequitable conduct claims, there is no question that Humanscale's declaratory judgment claims "arise out of or are related to" Defendant's efforts to obtain discovery from Bloomberg.

In the analogous recent case of *Doe v. Arnett,* No. SACV 12-96-JST (ANx), 2012 U.S. Dist. LEXIS 107791 (C.D. Cal. Aug. 1, 2012), the court addressed the question of jurisdiction in a declaratory judgment action stemming out of a prior copyright lawsuit. In that case, the declaratory judgment defendants (a Kentucky attorney and his law firm) had issued a subpoena out of the U.S. District Court for the Central District of California seeking the identities of a group of California residents who had allegedly violated the Digital Millennium Copyright Act ("DMCA") by reposting a copyrighted picture of the attorney on their website. *Id.* at *3. The subpoena was subsequently withdrawn. *Id.* at *4. In the later declaratory judgment action against the defendants, the *Arnett* court held that defendants' prior availing of the court's subpoena power was sufficient to establish specific personal jurisdiction in the Central District of California:

> Defendants consented to jurisdiction in this Court by availing themselves of the administrative subpoena process under the DMCA to prosecute their potential claims under the Copyright Act. This action pertains to that same dispute, and directly implicates the veracity of documents relied upon to procure relief from this Court. Therefore, at least as to Plaintiffs' DMCA and copyright-based claims, which are the only matters remaining before this Court, Defendants consented to personal jurisdiction. Accordingly, their Motion to Dismiss on the basis of personal jurisdiction is denied as to those claims.

*Id.* at *16 (emphasis added).

As in *Arnett*, the Defendants in this case have availed themselves of this Court's subpoena power to take discovery from New York residents related to the exact same

subject matter as the instant declaratory judgment action – the validity and enforceability of the '978 patent.  Having availed themselves of this Court's subpoena power when it suited them, Defendants consented to the Court's jurisdiction.  They cannot now complain of being subject to that jurisdiction in a subsequent litigation arising out of the exact same subject matter as the prior subpoena.

## C.     Jurisdictional Discovery Will Reveal Additional Evidence Supporting Personal Jurisdiction

The foregoing facts are enough to satisfy Humanscale's burden of making a *prima facie* case for specific personal jurisdiction over Mass and Mr. Moscovitch.  As such, the Court should deny Defendants' motion outright.  However, if the Court believes more evidence is necessary or appropriate, Humanscale respectfully requests that it be allowed to take limited jurisdictional discovery from Defendants and appropriate third parties, namely Bloomberg and Defendants' counsel from the prior litigations.

At a bare minimum, jurisdictional discovery will provide Humanscale greater information regarding the Bloomberg prior art activity, Defendants' efforts to enforce the '978 patent against residents of New York, and Defendants' efforts to defend the validity of the patent in New York.  Because the majority of the evidence from the *Ergotron* litigation is subject to a protective order (*see* Niederluecke Decl. Ex. 3), Humanscale requires the Court's authority to obtain access to that evidence.

Jurisdictional discovery will also allow Humanscale to investigate Defendants' claim that there is no forum in the United States in which either defendant would be subject to general personal jurisdiction.  (*See* Niederluecke Decl. Ex. 5.)  While Defendants have asserted that "none of [Mass's] U.S. sales activities are significant or robust enough for any Court in the United States to exercise general jurisdiction over it[,]" and Mr. Moscovitch "does not have

continuous or systematic contact with any jurisdiction in the United States, through sales or otherwise," Defendants have not provided any evidence supporting these assertions. (*See id*. at 1-2.)[4] Humanscale notes that in the *Mass v. 9X Media* litigation, Defendants alleged that "in accordance with 35 U.S.C. § 287, MASS has marked the products manufactured and sold by MASS that fall within the claims of the '978 patent." (Niederluecke Decl. Ex. 1 at ¶ 66.) This statement gives rise to the strong implication that at least some portion of Defendants' sales and related business activities occur in the United States, where the '978 patent has effect. Depending on the volume and nature of those contacts, they may give rise to general personal jurisdiction in New York or another forum state.

### D. <u>Venue is Proper</u>

Pursuant to 28 U.S.C. § 1391(b), venue is proper in:

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

As discussed above, the great weight of the events and evidence giving rise to Humanscale's invalidity and inequitable conduct claims can be found in the Southern District of New York. As far as Humanscale is aware, any significant events related to these claims that did not occur in New York occurred just across the border in Toronto, Canada. Likewise, for the reasons discussed above, Defendants are subject to personal jurisdiction in this District.

---

[4] Defendants' counsel made similar statements to the Court at the status conference held on February 22, 2013.

Defendants do not identify any alternative forum in which a greater portion of the events giving rise to Humanscale's claims allegedly occurred. Indeed, Defendants' arguments regarding venue simply paraphrase their position that there is allegedly no forum in the United States where acts giving rise to Humanscale's declaratory judgment action occurred (other than Defendants' arbitrary decision to sue Humanscale and 29 other defendants in the Eastern District of Texas).

As demonstrated above, Humanscale's invalidity and inequitable conduct claims arise out of Defendants' prior art activities in and directed to New York. Humanscale is entitled to pursue those claims here, where the Court can compel the key third-party witnesses to testify live at trial. *See, e.g.*, *Int'l Sec. Exch., LLC, v. Chi. Bd. Options Exch., Inc.*, No. 06-cv-13445 (RMB)(THK), 2007 U.S. Dist. LEXIS 58790, at *8 (S.D.N.Y. Aug. 9, 2007) (transferring venue in a patent litigation to the Northern District of Illinois because "the bulk of Defendant's witnesses are non-party witnesses who are not subject to subpoena power in New York, but are subject to such authority in Chicago" and because "Defendant's patent validity challenge requires demonstration of prior art located in Chicago"). In another venue, Humanscale would be forced to put this critical evidence into the record through deposition testimony and documents, rather than affording the jury the full opportunity to evaluate the evidence in person.

In short, there is no forum with a greater nexus to the facts of this case than the Southern District of New York. Humanscale, its witnesses, and its records are all located here. Defendants engaged in critical prior art activity in and directed to New York, which they then failed to disclose to the patent office. The third party witnesses with knowledge of those acts (current and former Bloomberg employees) are here. And finally, the documentary and physical evidence related to the Bloomberg prior art is here, as proven by Defendants' own subpoena

issued out of this Court seeking discovery of that evidence in the *Mass v. Ergotron* litigation. This matter should be tried and resolved in New York.

## 4. CONCLUSION

For the foregoing reasons, Defendants Mass Engineered Design and Jerry Moscovitch are subject to at least this Court's specific personal jurisdiction. Accordingly, Humanscale respectfully requests that their motion to dismiss be denied outright. In the alternative, Humanscale respectfully requests that the Court grant it limited jurisdictional to obtain further evidence regarding Defendants' contacts with New York and other venues within the United States.

Dated: March 8, 2013                    By:            s/Adam R. Steinert

Scott R. Samay
ssamay@winston.com
Jason S. Charkow
jcharkow@winston.com
Anna Lamut
alamut@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700

*and*

Kurt J. Niederluecke
kniederluecke@fredlaw.com
Adam R. Steinert
asteinert@fredlaw.com
FREDRIKSON & BYRON, P.A.
200 South Sixth St , Suite 4000
Minneapolis, MN 55042
Telephone:  (612) 492-7000
Facsimile:  (612) 492-7077
asteinert@fredlaw.com

*Attorneys for Plaintiff*
*Humanscale Corporation*

*Of Counsel*

Signe B. Purup
General Counsel
Humanscale Corporation
11 E 26th St, 8th Fl.
New York, NY 10010
Telephone: (212) 725-4749 ext. 6117
Facsimile: (212) 725-7545
spurup@humanscale.com